IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| CHRISTOPHER VAUGHN, § | |
|    Plaintiff, § | |
| § | |
| v. § | EP-19-CV-00340-KC-ATB |
| § | |
| (UNKNOWN) ANAYA, § | |
|    Defendants. § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

On this day, the Court considered Defendant's "12(b)(6) Motion to Dismiss Defendant in His Official and Individual Capacity" ("Motion"), filed by Defendant (Unknown) Anaya ("Anaya") on October 15, 2020. (ECF No. 43). The matter was referred to this Court pursuant to the Standing Order referring prisoner civil rights cases to United States Magistrate Judges.

For the reasons set forth below, the Court **RECOMMENDS** that Defendant's Motion be **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

## I.   BACKGROUND

### a.   Procedural Background

Plaintiff Christopher Vaughn ("Vaughn"), proceeding *pro se* and *in forma pauperis*, filed his initial complaint on November 22, 2019, alleging multiple constitutional violations by numerous defendants based upon his time in the custody of the El Paso County Sheriff's Office. (ECF No. 2). On May 8, 2020, Vaughn filed his amended complaint ("Complaint"), adding Anaya as a defendant in his official and individual capacity, and alleging that Anaya assaulted him on

1

January 31, 2020, using excessive force in violation of his Eighth Amendment right against infliction of cruel and unusual punishment. (ECF No. 27, p. 4, 9).[1]

After a Report and Recommendation from this Court (ECF No. 30), the District Court dismissed all claims on September 4, 2020, pursuant to 28 U.S.C. §1915(e)(1)(2) except for Vaughn's excessive use of force claims against Anaya and Defendant (Unknown) Acosta. (ECF No. 36, p. 21). Subsequently, the claim against Defendant (Unknown) Acosta was severed and dropped from this suit. (*Id.*). On October 15, 2020, Anaya filed the instant Motion seeking dismissal of Vaughn's claims. (ECF No. 43). To date, Anaya's Motion remains unopposed as Vaughn has not filed a response.

      **b.**      **Factual Background[2]**

In his Complaint, Vaughn seeks to bring an excessive use of force claim against Anaya. (ECF No. 27, p. 4, 9). Vaughn alleges that on January 31, 2020, Vaughn began to flood his cell after Defendant Officer Anaya told Vaughn he would not be receiving his evening snack or milk. (*Id.* at p. 10). Thirty minutes later, Anaya and another officer approached Vaughn's cell, and Anaya told Vaughn "we're coming in to [beat] you up." (*Id.*). Vaughn stood facing the wall with his hands above his head, and Anaya came in with the other officer and punched Vaughn twice in his lower back. (*Id.*). Anaya then put Vaughn in a headlock. (*Id.*). Next, Vaughn was taken out of his cell with his hands cuffed behind his back and his arms raised high thereby causing him to bend over and suffer pain. (*Id.*). The officers then moved Vaughn into a visitation cell while still in handcuffs. (*Id.*).

---

[1] Although Vaughn alleges his excessive force claims are a violation of his Eighth Amendment right, the District Court previously held that Vaughn's constitutional rights as a pretrial detainee "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." (ECF No. 36, p. 5) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)).
[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

While still handcuffed in the visitation cell, Vaughn requested to see a corporal, but Anaya responded to Vaughn that "they were not going to find out." (*Id.* at p. 11). Vaughn then "broke the phone knowing this would get [him] put in the violent cell down in booking where [he] could report the staff assault to a corporal and get medical attention." (*Id.*). Subsequently, while Anaya and the other officer were taking Vaughn to a visitation cell in the booking unit of the jail, the officers "slammed [Vaughn] into the door hitting [his] face." (*Id.*). Upon arriving at booking, the officers then placed Vaughn's face "into the violent cells [sic] toilet in the ground." (*Id.*).

After these incidents, Vaughn was taken to "medical" where a nurse noticed red marks on Vaughn's neck and back. (*Id.*). Vaughn requested that pictures be taken of his injuries, however, his request was denied. (*Id.*). In the absence of photographs of his injuries, Vaughn provided hand-drawn illustrations in his Complaint indicating the locations of the marks on his body. *See* (*Id.* at p. 13).

## II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam) (citation omitted).

### III. ANALYSIS

#### a. Vaughn's Claim Against Anaya in His Official Capacity

Anaya argues that Vaughn's claim against him in his official capacity is "equivalent [to a] suit[] against the government entit[y] that employ[s him]." (ECF No. 43, p. 4). Further, Anaya argues that Vaughn's Complaint "fails to plead sufficient facts to state a claim to relief that is plausible on its face," because it "do[es] not allege [that] any conduct was the result of an official El Paso County policy or custom." (*Id.* at p. 4-5) (internal quotes and citations omitted).

"A claim against an officer in his official capacity is treated as a claim against the municipality." *Jordan v. Brumfield*, 687 F. App'x 408, 4015 (5th Cir. 2017); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In his Complaint, Vaughn identifies Anaya as an officer "assigned to [the] El Paso County Jail Annex." (ECF No. 27, p. 4). Anaya contends that El Paso County Jail Annex officers are employed by El Paso County. (ECF No. 43, p. 4). Therefore, the Court finds that any claims against Officer Anaya in his official capacity shall be construed as claims against El Paso County. *See generally Feliz v. El Paso County*, 441 F. Supp. 3d 488, 494 n.2 (W.D. Tex. 2020).

Assuming, *arguendo*, that Vaughn had named the proper defendant, El Paso County, in his Complaint, Defendant Anaya argues that "[t]he County of El Paso should not be held liable for Anaya's alleged excessive-use-of-force." (ECF No. 43, p. 4).

Municipalities cannot be held liable under 42 U.S.C. § 1983 based upon a theory of vicarious liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *see Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) ("[A municipality] is liable only for acts directly attributable to it 'through some [sort of] official action or imprimatur.'") (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Municipality liability is "limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Under Section 1983, municipal liability for a policy or custom claim requires proof of: (1) a policy maker; (2) an official policy or custom; and (3) a violation of constitutional rights of which

the "moving force" is the official policy or custom. *Piotrowski*, 237 F.3d at 578. Furthermore, only where a municipality adopts a policy that violates a constitutional right, or fails to adopt a policy preventing the violation of a constitutional right "evidenc[ing] a 'deliberate indifference' to the rights of its inhabitants[,] can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Therefore, to establish municipal liability, a plaintiff must establish both municipal causation and culpability. *See Snyder v. Trepagnier*, 142 F.3d 791, 795-96 (5th Cir. 1998) ("Plaintiffs seeking to win under this theory must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens.").

Moreover, there are multiple ways in which a custom or policy can be found to exist. First, a custom or policy can stem from a single act by an official with final policymaking authority. *See Pembaur*, 475 U.S. at 481-83 (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability). Second, the custom or policy can also be a policy statement formally announced by an official policymaker. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)). Finally, a custom or policy can also be demonstrated through a "persistent[,] widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168; *see Webster*, 735 F.2d at 841. "For a custom or practice to be considered a de facto policy, however, a plaintiff must allege facts 'showing a pattern of abuses that transcends

the error made in a single case.'" *Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *15 (W.D. Tex. Nov. 19, 2014) (quoting *Piotrowski*, 237 F.3d at 582). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578.

Vaughn's Complaint fails to allege the existence of an official policy adopted by El Paso County or the El Paso County Jail Annex. A plaintiff seeking to establish municipal liability under *Monell* based upon an official policy "may point to a policy statement formally announced by an official policymaker." *Zarnow*, 614 F.3d at 168. In his Complaint, Vaughn makes no such allegation. Accordingly, the Court finds that Vaughn has not alleged the existence of an official policy "announced by an official policymaker." *Id.*

Further, the Court finds that Vaughn has failed to allege the existence of a custom within the El Paso County Jail Annex. Rather than relying on an official policy, a "plaintiff may demonstrate a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipal policy.'" *Id.* (quoting *Webster*, 735 F.2d at 841). However, "to plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (internal quotes and citation omitted).

In *Peña v. City of Rio Grande City*, "the only 'specific fact' in the complaint [was] the single incident in which Peña was involved." *Id.* The Fifth Circuit held that the plaintiff's allegations were "conclusional and utterly devoid of factual enhancements." *Id.* (quotation marks omitted). Similar to *Peña*, Vaughn's Complaint is devoid of any facts other than those relating to the two isolated incidents which gave rise to his alleged injuries involving Anaya and Officer

7

(Unknown) Acosta.  However, "'[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (quoting *Bennet v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).  Therefore, the Court finds that Vaughn has failed to allege a custom in his Complaint sufficient to establish municipal liability under *Monell*.

The Court also finds that Vaughn's allegations contained in his Complaint do not allege the existence of a policymaker, as required to establish municipal liability.  In *Peña*, the Fifth Circuit explained that "because the identity of the policymaker is a legal question, courts should not 'grant motions to dismiss for failing to plead [a] specific identity.'  Rather, 'the compliant need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.'" *Id.* (quoting *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016)).  The Fifth Circuit then held that the "complaint invite[d] no more than speculation that any particular policymaker, be it the chief of police or the city commissioner, knew about the alleged custom" and found that the plaintiff had failed to allege a policymaker. *Peña*, 879 F.3d at 622.  Just as in *Peña*, Vaughn's Complaint does not suggest the existence of a policymaker.  Therefore, the Court finds that Vaughn has not named the proper defendant for a municipal liability claim and that Vaughn has failed to state a claim for municipal liability.  Accordingly, the Court recommends that Anaya's Motion to Dismiss Vaughn's claims against Anaya in his official capacity be granted.

### b. Vaughn's Claim Against Anaya in His Individual Capacity

Defendant Anaya argues that Vaughn's "claim against Anaya in his individual capacity should be dismissed because Anaya is entitled to qualified immunity." (ECF No. 43, p. 6).

8

Qualified immunity protects "state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "[L]ower courts have discretion to decide which of the two prongs of [the qualified immunity] analysis to tackle first." *Jackson*, 959 F.3d at 200 (quoting *Ashcroft*, 563 U.S. at 735). "The plaintiff has the burden of establishing a constitutional violation and overcoming a [qualified immunity] defense." *Jackson*, 959 F.3d at 201 (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en blanc) (per curiam)). To meet this burden, "the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a [qualified immunity] defense with equal specificity.'" *Jackson*, 959 F.3d at 201 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Jackson*, 959 F.3d at 200-01 (internal citation omitted) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Here, Vaughn alleges Anaya inflicted cruel and unusual punishment upon him through the use of excessive force.

Pretrial detainees have a constitutional right under the Fourteenth Amendment's Due Process Clause to be free from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015). To prove an excessive force claim, "a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Id.* at 396–97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at

397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  A court must assess the reasonableness of the force used "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security."  *Kingsley*, 576 U.S. at 399–400.  In determining the objective reasonableness of an officer's use of force, a court should consider the following factors:  (1) "the relationship between the need for the use of force and the amount of force used;" (2) "the extent of the plaintiff's injury;" (3) "any effort made by the officer to temper or limit the amount of force;" (4) "the severity of the security problem at issue;" (5) "the threat reasonably perceived by the officer;" and (6) "whether the plaintiff was actively resisting."  *Id.* at 397 (*Kingsley* factors).

Defendant Anaya alleges that "Vaughn's pleadings are not enough to show how any alleged action by Anaya violated a clearly established constitutional right and how Anaya's actions were objectively unreasonable."  (ECF No. 43, p. 7).  Specifically, there are three incidents where Vaughn alleges Anaya used excessive force:  (1) when Anaya punched Vaughn twice in his lower back and placed Vaughn in a headlock ("Cell Incident"); (2) when Anaya and another officer "slammed [Vaughn] into the door hitting [his] face" while taking Vaughn to the visitation cell ("Hallway Incident"); and (3) when Anaya and the other officer placed Vaughn's face "into the violent cells [sic] toilet in the ground." ("Toilet Incident").  *See* (ECF No. 27, p. 10-11).

### 1.  *Cell Incident*

Immediately prior to the Cell Incident, Vaughn alleges that Anaya told Vaughn that he and the other officer were "coming in to [beat Vaughn] up."  (*Id.* at p. 10).  During the Cell Incident, Vaughn alleges that he was facing the wall with his hands above his head when Anaya entered the cell and punched Vaughn twice in the lower back, placed him in a headlock, and took him out of the cell with his hands cuffed behind his back and armed raised high, causing Vaughn to suffer

pain. (*Id.*). Anaya does not deny these allegations in his Motion but argues that he was responding to "an immediate disciplinary need" since Vaughn had begun to flood his cell. (ECF No. 43, p. 6).

Balancing the factors provided in *Kingsley*, the Court finds the factual circumstances ambiguous in determining whether Anaya's conduct was objectively unreasonable. The fact that Vaughn was flooding his cell increases "the severity of the security problem at issue." *Kingsley*, 576 U.S. at 397. However, the fact that Vaughn was facing the wall with his hands above his head, when Anaya entered the cell, weighs against Anaya in regard to "whether the plaintiff was actively resisting." *See, e.g.*, *Torrez v. Semple*, No. 3:17-CV-01211, 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("Torrez alleges that he was walking back to the bull pen in compliance with Officer Castillo's order when Officer Castillo moved immediately in front of Torrez. Although Torrez raised his hands to indicate he did not want any trouble, Officer Castillo punched him. . . . Those allegations suffice to satisfy the requirement of *Kingsley*."). Further, it is ambiguous whether there was a "threat reasonably perceived by [Anaya]," or whether "any effort [was] made by [Anaya] to temper or limit the amount of force." *See* (ECF No. 27, p. 10) (Vaughn alleges that Anaya was the initial aggressor and told Vaughn that he and the other officer were "coming in to [beat Vaughn] up.").

Moreover, Anaya cites no legal authority for his argument that punching a pretrial detainee twice in the lower back, who is facing a wall with his hands above his head, and then placing him in a headlock is objectively reasonable when the detainee floods his cell. *See* (ECF No. 43, p. 6-7). Anaya cites two Supreme Court cases outlining the standards for judicial inquiry into the excessive use of force claims by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause. (*Id.*) (arguing the "the judicial inquiry should be whether force was

applied in a good faith effort to maintain or restore discipline, or to maliciously and sadistically cause harm") (citing *Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitney v. Albers*, 475 U.S. 312 (1986)).  However, Vaughn is a pretrial detainee whose excessive force claims are construed by the Court to be brought under the Fourteenth Amendment's Due Process Clause.  When comparing the Eighth Amendment's Cruel and Unusual Punishment Clause with the Fourteenth Amendment's Due Process Clause, the Supreme Court has held that "[t]he language of the two Clauses differs, and the nature of the claims often differs." *See Kingsley*, 576 U.S. at 400 ("[M]ost importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'").  Further, the Supreme Court in *Kingsley* held that "*Whitney* and *Hudson* are relevant [for pretrial detainee claims of excessive force] only insofar as they address the practical importance of taking into account the legitimate safety-related concerns of those who run jails," which the Supreme Court already considered when it articulated the *Kingsley* factors. *Id.* at 401.

Here, the Court finds that the *Kingsley* factors are ambiguous in determining whether Anaya's conduct was objectively unreasonable given the circumstances.  It is for the jury or other trier of fact, not this Court on a motion to dismiss, to properly weigh these factors. *See generally Randell v. Davis*, 986 F.2d 1419, 1993 WL 58772, at *3 (5th Cir. 1993) (where the Fifth Circuit held that "genuine issues of material fact remain[ed] regarding the use of excessive force and the objective reasonableness of using such force," such that the defendant was not entitled to summary judgment but could "still [] assert qualified immunity at trial.").  In sum, liberally construing Vaughn's Complaint with all reasonable inferences resolved in the light most favorable to Vaughn, the Court finds that Vaughn has pled a plausible claim for relief regarding the alleged excessive force used during the incident in his cell.

### 2. *Hallway Incident*

During the Hallway Incident, Vaughn alleges that Anaya and the other unknown officer "slammed [Vaughn] into the door hitting [his] face" while "walking between the 600 and 700 pods." (ECF No. 27, p. 11). Anaya argues that "[i]t is not clear from [Vaughn's] pleadings alone whether Vaughn's body was allegedly slammed into a door and then his face made contact or whether he was slammed face first into the door." (ECF No. 43, p. 7). Anaya does concede, however, that "the latter may be objectively unreasonable." (*Id.*).

*Pro se* pleadings are reviewed under a less stringent standard and are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). The Court must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted).

In his Motion, Anaya offers two different interpretations of Vaughn's Complaint regarding the Hallway Incident but does not argue that either are unreasonable readings of Vaughn's claims. (ECF No. 43, p. 7) ("It is not clear from [Vaughn's] pleadings alone whether Vaughn's body was allegedly slammed into a door and then his face made contact or whether he was slammed face first into the door."). Construing Vaughn's claim liberally with all reasonable inferences and every doubt resolved on Vaughn's behalf, the Court finds that Vaughn is alleging that he was slammed into the door "face first." Accordingly, the Court finds, and Anaya agrees, that this alleged conduct "may be objectively unreasonable." *See* (*Id.*).

Furthermore, Anaya provides no support for the position that slamming a handcuffed inmate into a door while the inmate is being restrained by two officers, even if not face first, would

13

be objectively reasonable. *See* (ECF No. 43). Anaya argues that slamming "Vaughn's body . . . into a door and then [Vaughn's] face [making] contact" with the door is objectively reasonable "*if* Vaughn was pushed against a door to restore discipline and maintain security and order." (ECF No. 43, p. 7). However, Anaya does not specifically assert in his motion that "maintain[ing] security and order" was the reason Vaughn was slammed into the door, but instead generally argues that "Anaya was at all times furthering a legitimate interest in maintaining security and order" and that Vaughn "wreaked havoc everywhere he was situated to get the guards['] attention." (*Id.*).

In *Alanis v. City of Brownsville*, the District Court for the Southern District of Texas denied a defendant's motion for summary judgment when the video evidence was inconclusive as to whether the prisoner was "deliberately driven into a padded wall" or whether the incident was an accident. No. 1:16-CV-190, 2018 WL 11183788, at *9 (S.D. Tex. June 7, 2018), *report and recommendation adopted*, No. 1:16-CV-190, 2018 WL 11183821 (S.D. Tex. July 24, 2018). The video showed the plaintiff-arrestee making "a rapid, jerking motion" and later showed both the defendant-officer and the plaintiff-arrestee "crashing against the wall." *Id.* Here, like *Alanis*, there appears to be a temporal gap between the perceived threat to security and order and the alleged ambiguous use of force. Vaughn broke the phone while he was alone in the visitation cell, but the force used during the Hallway Incident did not occur until later when Anaya and the unnamed officer were transporting the handcuffed Vaughn to the "violent cell." *See* (ECF No. 27, p. 10-11).

Furthermore, the court in *Alanis* weighed whether the defendant-officer's force was deliberate or a result of an accidental loss of balance, not whether the plaintiff-arrestee crashed "face first" or "body first" into the wall. *Alanis*, 2018 WL 11183788, at *1-2, *9, *13. Like *Alanis*, the Court here finds no reason to distinguish between whether Vaughn was slammed "face first"

14

or "body first" into the door between the 600 and 700 pods. In either scenario, the Court finds that the use of force could be objectively unreasonable given the circumstances.

Accordingly, the Court finds that Vaughn has pled a plausible claim for relief regarding the alleged excessive force used during Hallway Incident.

### 3.   *Toilet Incident*

During the Toilet Incident, Vaughn alleges that upon arriving at booking, Anaya and the other unnamed officer placed Vaughn's face "into the violent cells [sic] toilet in the ground." (ECF No. 27, p. 11). Anaya argues that Vaughn has failed to state a claim regarding this incident since "[i]t is unknown who placed Vaughn's face inside the toilet as Vaughn's amended complaint is void of this information." (ECF No. 43, p. 3). To the contrary, the Court fails to see how the Complaint is "void" of any identifying information. First, Vaughn explains in his Complaint that the entire four page "Statement of Fact's [sic]" is in reference to the incident where "Officer Anaya[] assaulted [Vaughn]." (ECF No. 27, p. 9-10). Further, Vaughn describes the incident regarding the toilet in relevant part:

> These same 2 officers [Anaya and the unnamed officer] then took me. While walking between 600 and 700 pods I was slamed [sic] into the door hitting my face. [] Once I got to booking my face was put into the violent cells [sic] toilet in the ground. Corpol [sic] Rodriguez told the officers to "stop, take the cuffs off and get out."

(*Id.* at p. 11). Vaughn identifies Anaya as one of the two "officers" throughout the Complaint's Statement of Facts. Reading the Complaint "in the light most favorable to [Vaughn] and with every doubt resolved on his behalf," the Court finds that Vaughn is alleging that Anaya was one of the "officers" who took him to the violent cell and who Corporal Rodriquez ordered to "stop." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). Construing

the Complaint with every reasonable inference in Vaughn's favor, the Court finds that Vaughn is alleging Defendant Anaya was one of the two officers who placed Vaughn's face into the toilet.

Furthermore, Anaya does not dispute that placing a handcuffed detainee's face into a toilet is objectively unreasonable and has not cited to any legal authority to the contrary. *See* (ECF No. 43). In fact, at least one district court has found that such similar conduct is sufficient to state a claim of excessive force. *See, e.g.*, *Ford v. Garza*, No. C-08-330, 2008 WL 5068708, at *2-3 (S.D. Tex. Nov. 21, 2008) (holding that when taking the plaintiff's allegations as true, the plaintiff "alleged sufficient facts to state a claim of excessive force" against a defendant who "struck [the plaintiff] in the head with a telephone receiver," "hit plaintiff in the face several times," and "pushed his face into the toilet bowl").

In sum, liberally construing Vaughn's Complaint with all reasonable inferences resolved in the light most favorable to Vaughn, the Court finds that Vaughn has pled a plausible claim for relief regarding the alleged use of excessive force during the Toilet Incident.

### *4.     Conclusion*

In sum, the Court finds that Vaughn has alleged a plausible claim for relief regarding the excessive force used by Defendant Anaya. Further, the Court has not found, and Anaya has failed to provide, any support for Anaya's position that his actions were objectively reasonable given the circumstances. The Court, however, "express[es] no view as to the facts that may be established at trial or as to the legal significance of those facts." *Randell*, 1993 WL 58772, at *3. Accordingly, the Court recommends that Anaya's Motion to Dismiss Vaughn's claims against Anaya in his individual capacity be denied.

## IV. CONCLUSION

Based on the aforementioned reasons, the Court **RECOMMENDS** that:

- Defendant's Motion to Dismiss Vaughn's claim against Anaya in his official capacity be **GRANTED**; and

- Defendant's Motion to Dismiss Vaughn's claim against Anaya in his individual capacity be **DENIED.**

**SIGNED** and **ENTERED** this 16th day of December, 2020.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**